PAWLOWSKI, Respondent, vs. ESKOFSKI and another, Appellants.

*September 15—October 11, 1932.*

190

For the appellants there were briefs by *Sanders & Mc-Cormick* of Milwaukee, and oral argument by *A. J. Sanders.*

For the respondent there was a brief by *Rubin & Zabel,* and oral argument by *Roy R. Stauff* and *William A. Zabel,* all of Milwaukee.

FOWLER, J.   In the view we take of the case only two assignments of error need be considered.   These are that the court erred (1) in overruling the plea in abatement

and (2) in not dismissing the case on the merits for want of evidence to support the verdict.

(1) The plea in abatement was based on a provision of the insurance policy that no action should be brought upon it until after the liability of the insured had been determined by judgment after trial, or by agreement with the written consent of the insurer. There was no such agreement. The policy was issued and the accident involved occurred prior to the enactment in 1931 of sec. 260.11, Stats., which makes an insurer indemnifying a motor vehicle owner against liability for injuries caused by his negligence a proper party defendant in any action brought against the insured to recover for injuries so caused. It is contended by the appellants that this statute, as applied to policies issued before its enactment, is unconstitutional under sec. 10, art. I, of the United States constitution, prohibiting states to pass laws impairing the obligation of contracts.

The no-action clause of the policy here involved is identical with that involved in *Morgan v. Hunt,* 196 Wis. 298, 220 N. W. 224, wherein it was held that an action could not be maintained against an insurer until the liability against the insured had become fixed as by the clause provided. The rule of that case obtained at the time this policy was issued. *Bergstein v. Popkin,* 202 Wis. 625, 233 N. W. 572. In the *Popkin Case* a plea in abatement had been interposed, overruled, and judgment entered against both insured and insurer. The case was reversed with directions to dismiss as to the insurer and for a new trial as to the insured. A like ruling must be made here, if the appellants' position under the contract clause of the constitution of the United States is upheld. The respondent contends that the statute cited is remedial only, and therefore retroactive and applies to the instant case.

It is true as a general rule that statutes that are remedial only are retroactive, and it is also true that prior enactments

similar to the one in suit have been stated in opinions of this court to be remedial. But statutes are not to be given retroactive effect if so doing will deprive the parties to the contract of a valuable right. The decisions of the United States supreme court upon questions arising under the contract clause of the United States constitution are of course conclusive upon this court. That court long ago held that any statute, whether remedial or not, that operated to deprive a party to a contract antedating the enactment of the statute of any valuable right secured to him by that contract is void as to that contract. *Edwards v. Kearzey,* 96 U. S. 595. If a statute substantially lessens the value of a preexisting contract the constitutional provision bars application of it to the contract. Many decisions of the supreme court of the United States have so held. This was held as far back as 6 Howard, where it is said in *Planters' Bank v. Sharp* (p. 327):

"One of the tests that a contract has been impaired is, that its value has by legislation been diminished. It is not, by the constitution, to be impaired at all. This is not a question of degree or manner or cause, but of encroaching in any respect on its obligation, dispensing with any part of its force."

It has been recognized in later cases that the impairment or diminution of value must be to some substantial degree. But the fact that the court of a state has declared that the statute involved "impaired the obligation of the existing contract very slightly and remotely" has not saved the judgment of the court from reversal for applying it to the contract. *Bank of Minden v. Clement,* 256 U. S. 126, 41 Sup. Ct. 408, where the above quotation from the *Planters' Bank Case* is quoted with approval.

The decisions of our own state fully recognize this principle. *Second Ward Savings Bank v. Schranck,* 97 Wis. 250, 263, 73 N. W. 31, contains the following quotation

from *Brine v. Insurance Co.* 96 U. S. 627, citing *Edwards v. Kearzey, supra:*

"There is no doubt that a distinction has been drawn, or attempted to be drawn, between such laws as regulate the rights of the parties, and such as apply only to the remedy. . . . (But) at all events the decisions of this court are numerous that the laws which prescribe the mode of enforcing a contract, which are in existence when it is made, are so far a part of the contract that no changes in these laws which seriously interfere with that enforcement are valid, because they impair its obligation."

The opinion further quotes from *Bronson v. Kinzie,* 1 How. 311, at p. 316, as follows:

"Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not *impair* the obligation of the contract; but if that effect is produced it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution."

In *Peninsular L. & C. Works v. Union O. & P. Co.* 100 Wis. 488, 491, 76 N. W. 359, it is said:

"Courts can draw no distinction between the right and the remedy where the latter affects materially the value of the contract obligation, and say the former is, and the latter not, within the scope of the constitutional inhibition."

That the contract provision here involved merely postpones the time of enforcement of the contract does not render it subject to the objection that it does not materially lessen the value of the contract or make the impairment immaterial or unsubstantial. In the case of *Home Ins. Co. v. Dick,* 281 U. S. 397, 50 Sup. Ct. 338, a provision of an insurance contract that suit should not be commenced on it unless within one year after the loss occurred was involved. This provision was valid in the jurisdiction where the contract was made. It was sued on in a state where a statute existed forbidding any agreement limiting the time for

suit to a period shorter than two years. The insurance company interposed the defense that the Texas statute violated the Fourteenth amendment and the contract clause of the United States constitution, and both contentions were sustained. A provision of a contract that suit shall not be brought on it until the liability of the person it indemnifies has been fixed by a judgment against him, is as valuable as one that it shall not be brought until a year after the liability accrued.

That the no-action clause of an indemnity policy does secure a valuable right, that it is of value, has inferentially been held by this court. In *Bergstein v. Popkin, supra,* the case was reversed for a new trial against the insured. If the no-action provision was of no value, why the reversal? If of no value, refusal to dismiss as to the company was not prejudicial to the insured and no new trial as to him was necessary. That the companies insert the clause in their policies indicates that they consider it of value to have the case of the owner of the automobile tried without knowledge on the part of the jury that he carried insurance. The many criticisms of counsel for injecting the fact of insurance on the trial contained in the opinions of this court have been based upon the idea that the court considered it prejudicial to have the fact called to the jury's attention. Our reversals for not dismissing and our criticisms were all pointless if the basis of them did not prejudicially affect the rights of the parties. And if it did prejudicially affect the rights of the parties, a provision of the contract securing that right is of value and must be upheld against a statute enacted subsequent to the execution of the contract. We are of opinion, therefore, that the plea in abatement should have been sustained and that judgment of dismissal as to the insurer should have been entered upon it.

(2) To support the judgment, findings of the jury that the condition of the tire was such that it was

dangerous to inflate it to the degree it was inflated, and (4) that defendant knew of the unsafe condition, must have support in the evidence. This follows from the rule of this court in *Cleary v. Eckart,* 191 Wis. 114, 210 N. W. 267, and *Waters v. Markham,* 204 Wis. 332, 235 N. W. 797, wherein it was held in effect that the guest assumes the risk of accidents occurring through defective condition of the car unless the host knew, or ought to have known, of that condition and failed to inform the guest of it. That tires are a part of the car within the rule was held in the *Waters Case.*

It is contended by the appellants that there is no competent evidence of any defective condition of the tire that caused the blowout. All the direct testimony, and there was much of it, for the most part by expert tire dealers and repairmen, was to the effect that the tire appeared in safe condition. The defendant testified that the tire appeared in good condition and that he had no knowledge or notice that it was not. Even the plaintiff's husband, upon whose testimony alone the finding of unsafety must rest, testified that the tire appeared all right to him, and he had assisted in putting it on shortly before it was inflated. His testimony was to the effect that the tire that blew out was inflated by the defendant at a garage a short time before it blew out; that another man was inflating a tire at the same time; that defendant used the other man's air gauge and asked the other man what it registered after he had inflated the tire; that the man looked at the gauge and said that the gauge showed thirty-eight pounds; said that defendant's tires were poor and that with thirty-eight pounds the tire might go to pieces in a few miles; and that the defendant then stated that he would take a chance on the tire. It is claimed by appellants that this testimony, so far as it goes to the condition of the tire, is hearsay and incompetent to

show that condition. That it is hearsay is plain, but respondent claims that it is nevertheless admissible as an admission of the defendant. It was admissible on the point of notice, but its admissibility as an admission depends on whether it falls within the classification of admissions by silence, based on the maxim that "silence gives consent." But . . . "the inference of assent (by silence) may safely be made only when no other explanation is equally consistent with silence; and there is always another such explanation—namely, ignorance or dissent—unless the circumstances are such that a dissent would in ordinary experience have been expressed if the communication had not been correct. This much has always been conceded judicially when the question has been presented." 2 Wigmore, Evidence (2d ed.) § 1071. The author quoted goes on to say that from the maxim stated a sort of working rule developed that whatever is said in a party's presence is admissible against him because presumably assented to; but that in this broad form it ignores inherent qualifications which the courts recognize and have stated in various situations. The simplest statement of the qualification and perhaps as good as any is that stated in *Wiedemann v. Walpole,* [1891] 2 Q. B. 534, 539, cited by Wigmore:

"Silence is not evidence of an admission, unless there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not."

Prolonged discussion of the point would hardly be helpful. We are of opinion that the statement involved cannot be considered as an admission for two reasons: the statement of the defendant that he "would take a chance" is as reasonably to be construed as a dissent to the stranger's opinion of the condition of the tire as an assent to it; and there was nothing in the circumstances to render it more

reasonably probable that one ordinarily would expressly deny the stranger's statement that the tire was poor than that he would not do so.

The only other possible basis for upholding the finding of the jury as to the defendant's negligence would be to apply the *res ipsa loquitur* rule, which would be to say that the blowouts do not ordinarily happen in the absence of negligence in driving the car at the time of the accident or in failing to inspect or inflate the tires properly previous to it. It is manifest that the negligence in driving cannot be so assumed. That improper inflating or inspection cannot be so assumed was inferentially held in *Ormond v. Wisconsin P. & L. Co.* 194 Wis. 305, 216 N. W. 489. See, also, *Giddings v. Honan,* 114 Conn. 473, 159 Atl. 271.

*By the Court.*—The judgment of the circuit court is reversed, with directions to dismiss the complaint.